**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

NEGASH MALEDE, #13051-007,

        Petitioner,

v.                                                              ACTION NO.  2:11cv322

ERIC WILSON,
Warden, FCI Petersburg,

        Respondent.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter was initiated by petition for writ of habeas corpus under 28 U.S.C. § 2241. The matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c)(1) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. Because the petition lacks merit, the undersigned recommends it be dismissed.

## I. STATEMENT OF THE CASE

Petitioner Negash Malede ("Malede") was convicted in the District of Columbia Superior Court of: (1) stalking, (2) threatening to injure a person; assault with intent to kill while armed, (3) possession of a firearm during a crime of violence, and (4) carrying a pistol without a license. He was sentenced to a term of fourteen (14) years, four (4) months to forty-three (43) years.

On January 11, 2005, Malede received his initial parole hearing from the United States Parole Commission, which, on August 5, 1998, assumed jurisdiction over District of Columbia Code Offenders through the National Capital Revitalization and Self-Government Improvement Act of 1997. *See* Pub. L. No. 105-33,§ 11231(a)(1), 111 Stat. 712, 745, D.C. Code § 24-13(a)

("Revitalization Act"); *see also* Answer Ex. 2. Malede was denied parole, and was ordered to have a reconsideration hearing in three years. Answer Ex. 3. Malede was next considered for parole on January 8, 2008. Answer Ex. 4. Malede was again denied parole, and was ordered to have a reconsideration hearing in three years. Answer Ex. 5.

The Commission reconsidered Malede for parole on December 1, 2009, applying the 1987 D.C. Board of Parole Regulations ("the 1987 Regulations"). Answer Ex. 6. Malede's Total Point Score was zero, indicating parole should be granted in the ordinary case. *Id.* The Commission departed from the guidelines, and denied parole, for the following reasons:

> The Commission has applied the D.C. Board of Parole's 1987 guidelines to the initial parole decision in your case. You have a total point score of 0 under the guidelines for D.C. Code offenders. The guidelines indicate that parole should be granted at this time. However, a departure from the guidelines at this consideration is found warranted because the Commission finds there is a reasonable probability that you would not obey the law if released and your release would endanger the public safety. You are a more serious parole risk than shown by your point score because your instant offense of conviction involved unusual cruelty to the victim, that is, physical, mental, or emotional abuse beyond the degree needed to sustain a conviction. Specifically, you attempted to stab the victim with a knife, you stalked her for a period of approximately one month, and then you shot her. The shooting involved unusual cruelty in that you shot the victim once in the leg and, after she fell to the ground, you shot her four more times, the last shot fired when you were only one foot away. Additionally, you have demonstrated a record of repeated negative institutional behavior which indicates your assaultive behavior has continued while incarcerated. Specifically, you have had three fights and another serious incident when you threatened a staff member with bodily harm.
>
> The guidelines for the time to rehearing indicate that your next hearing should be scheduled within 12 months. A departure from these guidelines is found warranted for the same reasons provided above for denying parole. The additional time in custody is needed to establish a record of institutional compliance and non assaultive conduct, and to participate in counseling programs such as Victim Impact and Changing Strategy, both of which would address the

>           underl[ying] cause of your criminal conduct and may help reduce
>           the risk you currently pose to the community.

Answer Ex. 7.

Malede, presently in the custody of the Federal Bureau of Prisons at the Federal Correctional Complex in Petersburg, Virginia, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on May 9, 2011. Malede asserts that he is entitled to relief under 28 U.S.C. § 2241 because the United States Parole Commission ("the Commission") violated the Ex Post Facto Clause of the United States Constitution when it failed to correctly apply the 1987 Regulations during his December 1, 2009 parole hearing. Pet. 8. Respondent filed an Answer in Opposition to the Petition on August 15, 2011. ECF No. 5. Malede replied on August 31, 2011. ECF No. 6. Accordingly, the matter is now ripe for adjudication.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Malede asserts the Commission applied its own parole guidelines when denying his parole, a decision that is "at odds" with the 1987 Regulations and 1991 Policy Statement, thus violating the Ex Post Facto Clause of the Constitution. Pet. 9. For the reasons that follow, this claim fails.

At the time of Malede's offense, prior to May 1996, parole decisions for District of Columbia Code violators were determined by the District of Columbia Board of Parole. The Revitalization Act abolished the District of Columbia Board of Parole and vested authority over parole decisions involving District of Columbia Code felony offenders in the Commission. *See* National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745. The Revitalization Act requires the Commission to exercise its authority "pursuant to the parole laws and regulations of the District of Columbia," but also grants the Commission "exclusive authority to amend or supplement any regulation

4

interpreting or implementing the parole laws of the District of Columbia with respect to felons." D.C. Code § 24-131(a)(1), (c) (2010).

The 1987 Regulations, which were adopted in 1985 and published in 1987, required the calculation of a Total Point Score based on the prisoner's Salient Factor Score (a risk assessment device relying exclusively on information known at the time of incarceration) adjusted for the type of risk (if current or past offenses involved violence, weapons or drug trafficking), and institutional behavior. *See Sellmon v. Reilly*, 551 F. Supp. 2d 66, 69-70 (D.C. Cir. 2008); *Ellis v. District of Columbia*, 84 F. 3d 1413, 1415-17 (D.C. Cir. 1996) (describing in detail the D.C. Board of Parole guidelines). If the Total Point Score was 2 or less at the initial hearing, the prisoner would ordinarily be granted parole. *Id.* If the Score was 3 or more at the initial hearing, parole would ordinarily be denied, and the prisoner would be continued for an annual rehearing. *Id.* At rehearings, a score of 3 would indicate that parole should be granted. *Id.* Departures from the action indicated by the Total Point Score were permitted. *Id.*

The Commission, effective August 5, 1998, adopted a revised version of the 1987 Regulations ("Revised Guidelines"). *See* 28 C.F.R. § 2.70 (1999) (the Commission's statement of authority for its revisions to the Rules of the D.C. Board of Parole). The revisions to the 1987 Regulations: (1) added additional risk factors to the Total Point Score by which the suitability of each prisoner for parole was calculated, and (2) substituted, in place of the Board's annual rehearing guideline, variable rehearing guideline ranges according to the Base Point Score (risk level) that was calculated for each prisoner. *Id.*

In *Sellmon*, the United States District Court for the District of Columbia held that application of the Revised Guidelines (28 C.F.R. § 2.80) may violate the Ex Post Facto Clause of the Constitution when applied to D.C. Code offenders who had committed their crimes before the

5

transfer of authority to the Commission. 551 F. Supp. 2d at 88.

The United States Constitution prohibits the enactment of an ex post facto law. U.S. Const. art. I, § 9, cl. 3; *id.* art. I, § 10, cl. 1. "The Ex Post Facto Clause bars enactments which, by retroactive application, increase the punishment for a crime that has already been committed." *Warren v. Baskerville*, 233 F.3d 204, 206 (4th Cir. 2000) (citing *Collins v. Youngblood*, 497 U.S. 37, 42 (1990)). Changes to parole statutes that create "a sufficient risk of increasing the measure of punishment attached to the covered crimes" may violate the Ex Post Facto Clause. *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 509 (1995). Yet, "[a]s the constitutional text makes clear, the ex post facto prohibition applies to 'laws.'" *Warren*, 233 F.3d at 207 (citing *United States v. Ellen*, 961 F.2d 462, 465 (4th Cir. 1992)); *see also Griggs v. Maryland*, 263 F.3d 355, 359 (4th Cir. 2001) (citing *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001)) (noting that "the Supreme Court's application of the Ex Post Facto Clause has been limited to statutes and administrative regulations with the force of law"). Thus, "[a] change in an administrative policy that was in effect at the time of a criminal's underlying offenses does not run afoul of the prohibition against ex post facto laws." *Warren*, 233 F.3d at 207 (citing *Ellen*, 961 F.2d at 465). The Supreme Court has found that a change to parole policy may violate the Ex Post Facto Clause if it "creates a significant risk of prolonging [an inmate's] incarceration." *Garner v. Jones*, 529 U.S. 244, 251 (2000).

The inmates in *Sellmon*, who successfully showed the Ex Post Facto Clause may have been violated when the Commission applied the 2000 Revised Guidelines during their parole hearings, were awarded new parole hearings, during which the 1987 Regulations were to be applied. *Sellmon*, 551 F.Supp.2d at 99. In response, the Commission promulgated a rule that the 1987 Regulations would be applied to any offender who committed his crime between March 4, 1985 (the effective date of the 1987 Regulations) and August 4, 1998 (the last day the D.C. Board

exercised authority over parole release). 74 Fed. Reg. 58540 (Nov. 13, 2009). Consequently, Malede was given a parole hearing in December 2009, during which the Commission applied the 1987 Regulations. Therefore, Malede has already been given the relief to which he would have been entitled, had he been able to show the Commission's denial of parole under the 2000 Revised Guidelines violated the Ex Post Facto Clause.

Malede argues he was "treated more harshly by the [Commission] than called for by the 1987 Regulations, which indicated that parole should have been granted." Pet. 9. Malede argues the Commission did not actually apply the 1987 Regulations during his December 2008 hearing, but instead applied the 2000 Revised Guidelines by relying on the nature and severity of the offense and institutional behavior, a practice prohibited by the 1987 Guidelines, in denying him parole. *Id.* Malede asserts he will be required to serve a longer period of incarceration, thus the Commission violated the Ex Post Facto Clause when it denied him parole. *Id.*

First, the Commission's parole decisions are not judicially reviewable on the merits. The D.C. parole statute provides that the Commission *may* authorize a prisoner's release if, "there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his or her release is not incompatible with the welfare of society, and that he or she has served the minimum sentence imposed or the prescribed portion of his or her sentence." D.C. Code § 24-404(a) (formerly § 204(a)). Release is discretionary, and parole decisions made pursuant to the parole statute are not reviewable on the merits. *See Stevens v. Quick*, 678 A.2d 28, 31 (D.C. App. 1996); *Smith v. Quick*, 680 A.2d 396, 398 (D.C. App. 1996).

Moreover, the factors relied upon by the Commission (unusual cruelty to victim and negative institutional behavior) are specifically outlined in the 1987 Regulations as permissible reasons to deviate from the outcome suggested by the Total Point Score. *See Ellis*, 84 F.3d at 1416

(citing D.C. Mun. Regs. tit. 28, § 204.22, App. 2-1). Appendix 2-1 lists six reasons for denying parole despite a low Total Point Score, including "unusual cruelty to victims." *Id.* The Board supplemented the Appendix with four additional factors that may justify a deviation, including "the offender has engaged in repeated or extremely serious negative institutional behavior." *Id.*

The Commission's decision to deny Malede parole despite his low Total Point Score was completely within their discretion under the 1987 Regulations. Malede's argument that the Commission's actions violated the Ex Post Facto Clause is without merit, and the petition should be DENIED.

### III. RECOMMENDATION

For the foregoing reasons, the Court recommends the petition for writ of habeas corpus be DENIED (ECF No. 1).

Furthermore, Malede has failed to demonstrate "a substantial showing of the denial of a constitutional right," therefore, it is recommended that the Court decline to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. *See Miller-El v. Cockrell*, 537 U.S. 322 (2003).

### IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(c):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to another party's objections within fourteen (14) days after being served

with a copy thereof.

    2. A district judge shall make a *de novo* determination of those portions of this Report or specified findings or recommendations to which objection is made.

    The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

/s/
Tommy E. Miller
United States Magistrate Judge

Norfolk, VA
December 14, 2011

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to the following:

Negash Malede, #13051-007
FCI Petersburg Medium
P.O. Box 1000
Petersburg, VA 23804

Susan L. Watt, Esq.
United States Attorney's Office
101 W. Main St.
Suite 8000
Norfolk, VA   23510

                                              Fernando Galindo, Clerk


                                      By _____
                                            Clerk of the Court

                                            December   , 2011